## JOSEPH BRAY et al.

*v.*

## GENERAL ENGINEERING COMPANY et al.

[Submitted March 15th, 1909. Decided March 24th, 1909.]

1. Upon a bill filed to restrain the further prosecution of an attachment suit, all the proceedings therein including the auditor's sale and auditor's deed were complained of upon two grounds, viz.: (1) Because the attachment proceeding was against B. only whereas it was based upon a covenant made by him and his wife contained in a deed made by them to the plaintiff in the attachment suit comprising real estate owned by her in her own right, and (2) because the proceeding was surreptitiously and oppressively carried on without B.'s knowledge and is therefore as to him constructively fraudulent and consequently void. It appeared upon the hearing that the writ of attachment was issued upon the

filing of an affidavit in the usual form against non-resident debtors stating an indebtedness by B. to the plaintiff which, it further appeared, grew out of the payment of a municipal lien affecting real estate comprised in a deed' of conveyance executed by B. and his wife, she being the owner of said real estate in her own right, to the plaintiff therein, who thereupon caused the writ to be issued against B., and it did not appear that B. had any notice whatever of the proceeding.—*Held,* (1) assuming that an action for damages may ·be cognizable in the law court upon the ground that the damages in the particular case were matter of calculation, nevertheless, the covenant is a joint one binding both husband and wife jointly and not severally, and they must therefore be jointly sued, and it appearing that she was also his joint debtor and residing in this state at the time of the commencement of the attachment suit, there is an irregularity in the attachment proceeding, but whether this court would have jurisdiction to entertain the complaint on that ground alone it is not necessary to decide. *Held further,* (2) after an examination of the evidence relating to the second objection respecting the manner in which the attachment was issued and the proceedings conducted, in view of the circumstances of this case, considering the severance of the obligation, the surreptitious manner of conducting the attachment proceeding, the fact that the lot of land comprised in the auditor's deed (the property of B. levied on), worth from $750 to $900, was purchased by the plaintiff in attachment for $25 subject to something over one hundred dollars in liens, it would not be equitable to permit the plaintiff in attachment to avail itself of the proceedings and that the auditor's deed and all the proceedings upon which it is formed would be set aside.

2. The two principles decided in this class of cases are these, viz.: (1) That a defendant in a judgment at law who has a defence which he might have made successfully at law if he had had an opportunity to set it up, but who was prevented from doing so by accident or by the fraud of his adversary unassisted with negligence or fraud on his part, may still have the benefit of his defence by suit in equity; and (2) that where a plaintiff in attachment recovered a judgment as against a defendant on a false claim or by concealing from the auditor any fact which tends to show that the claim on which his attachment is founded is not a valid one, a court of equity will, in case no relief can be had at law, interpose to protect the defendant against the judgment, provided he shows that the judgment was entered without his having such knowledge of the suit as afforded him an opportunity to make his defence.

3. Such relief, however, will be awarded 'upon condition that the complainant do equity, and therefore the decree will provide that upon payment to the grantee in the auditor's deed, being the. plaintiff in the attachment suit, of the amount paid to satisfy the municipal liens with interest, within twenty days after the date of the decree, thereupon said proceedings shall be null and void, and upon such payment, or tender thereof, said grantee .shall reconvey said premises to the defendant in the attachment suit, and discontinue and cancel said attachment proceedings.

On final hearing on bill, answer, replication and proofs.

*Mr. Alfred F. Stevens,* for the complainants.

*Mr. Thomas A. Davis,* for the defendants.

HOWELL, V. C.

This bill is filed to restrain the further prosecution of an attachment suit in the Hudson circuit court, in which the General Engineering Company is plaintiff and Joseph Bray is defendant.

The facts are that on September 3d, 1907, the complainants Joseph Bray and Mary J., his wife, made a conveyance to the General Engineering Company of a lot of land in the township of Kearny, in the county of Hudson, by a warranty deed in which they covenanted that the land was free of all encumbrances. The title to the lands conveyed was in the wife, so that she was bound by the covenant. *Gen. Stat. 2012* § 7.

The grantee in October, 1907, discovered that there were municipal assessments against the property amounting to upwards of $300. On July 21st, 1908, it paid the municipality $328.27 to satisfy these liens.

Joseph Bray, one of the complainants to this suit, held title to another lot in the same township. At the time of the transactions herein recited he was residing and had for many years been residing in the State of Nevada. The grantee, having paid the amount of the assessments, in the month of December, 1907, caused the attachment now complained of to be issued out of the Hudson circuit court against Joseph Bray alone to recover the damages which it had suffered by reason of the breach of the covenant against encumbrances contained in the deed above mentioned. The attachment proceeding was taken under the act for the relief of creditors against absent and absconding debtors. *P. L. 1901 p. 158.* It was begun by the usual affidavit against non-resident debtors, made by Alexander H. Mathesius, president of the engineering company, which stated that the defendant Joseph Bray was a non-resident and was indebted to the General Engineering Company in the sum of $321.33. In due course an auditor was appointed who sold the attached property. It was purchased by the General Engineer-

ing Company, the plaintiff in attachment, which took a deed for it dated July 20th, 1908.

The proceedings in the attachment suit have not been laid before the court, but it will be assumed not only that they were brought under the act above mentioned, but also that they were entirely regular as an attachment suit under the act above mentioned against Joseph Bray alone. The evidence shows that this lot which is valued by the witnesses at from $750 to $900 was sold at the auditor's sale and purchased by the General Engineering Company for $25, subject to a municipal levy of some sort, on which there was due something over a hundred dollars. Notwithstanding the sale of the lot in question and the purchase of it by the General Engineering Company, that company still claims that there is due to it over $400 on account of the judgment recovered by it in the attachment suit, including costs and expenses thereon. The bill alleges and the answer admits that the General Engineering Company is about to take proceedings to include in the attachment other lands belonging to the said Joseph Bray and sell them for the purpose of raising the four hundred odd dollars yet claimed to be in arrear.

This whole attachment proceeding, including the auditor's sale and the auditor's deed, is now complained of upon two grounds—*first,* because the attachment proceeding was against Joseph Bray alone, whereas it was based upon a covenant which was made by Joseph Bray and Mary J., his wife, in the deed above mentioned; *second,* that the proceeding was surreptitiously and oppressively carried on without the knowledge of the said Joseph Bray, and is, therefore, as to him constructively fraudulent and consequently void.

*First.* As to the first cause of complaint; assuming for the sake of the argument that an action for damages may be cognizable by the circuit court in an attachment suit upon the ground that the damages in the particular case are mere matter of calculation, can the plaintiff in the attachment suit in question proceed against one of two joint covenantors, or must the action be brought against the two? The statute above quoted (*Gen. Stat. 2013* § 7) seems broad enough to permit a married woman to bind herself jointly with her husband in covenants

against encumbrances, and in *Wahl* v. *Stoy, 72 N. J. Eq. (2 Buch.) 607*, Vice-Chancellor Bergen held that a married woman was bound by a restrictive covenant respecting her own land, although she had made the covenant in a deed executed by her which conveyed lands that belonged to the husband. The husband is liable by reason of his execution of the instrument containing the covenant. It appears on the face of it to be their joint action, and I must therefore hold that the covenant is a joint covenant binding them jointly and not severally. Under these circumstances their liability is joint and they must be jointly sued. *Barber* v. *Robeson, 15 N. J. Law (3 Gr.) 17; Curtis* v. *Hollingshead, 14 N. J. Law (2 Gr.) 402.* The principle is a very familiar one. There is, however, an exception to it arising out of section 3 of the Attachment act (*P. L. 1901 p. 159*), which permits attachments to issue against the separate and joint estate of joint debtors, or any of them, * * * and the estate so attached, whether separate or joint, may be sold or assigned for the payment of the joint debt. This statute was commented upon in the case of *Thayer* v. *Treat, 39 N. J. Law (10 Vr.) 150*, where it was held that an attachment might be issued under the section of the Attachment act referred to against one of several joint debtors, but only in a case where all such joint debtors were non-residents. This authority was considered and affirmed by the supreme court in *Corbit* v. *Corbit, 50 N. J. Law (21 Vr.) 363*, which held that where there was a proceeding in attachment against one joint debtor who was non-resident, it must affirmatively appear in the proceedings that the other joint debtors were non-residents also.

In this case it satisfactorily appears that the wife of Joseph Bray, who was also his joint debtor, continued to reside in this state and to be amenable to the writ of summons until the month of August, 1908, when she went to Nevada to join her husband. It thus appears that there is an irregularity in the attachment proceeding, but whether this court would have jurisdiction to entertain the complaint on that ground alone it is not at this time necessary to decide.

*Second.* The second objection relates to the manner in which the attachment was issued and the proceedings conducted. It

is said on the part of the complainants that not only is the proceedings against one joint obligor irregular and void, but also that the attachment proceeding in this case has been used in such a way as to oppress the defendant therein and subject him to real annoyance and loss, and this to such an extent as to be capable of characterization as a direct abuse of the process of the court. It does not appear that the defendant in attachment had any notice whatever of the proceeding. At the time of the issuing of the writ he was residing in Nevada; he has continued to reside there; it appears by the evidence of Mr. Mathesius, the president of the General Engineering Company, that no effort was made on his part as such president to notify Mr. Bray of the pendency of the attachment proceedings. Mr. Mathesius knew that only a short time before the wife of the defendant lived in Newark; he had visited her house for the purpose of discussing business matters with her and knew where she lived, and it is claimed that he was told that she had rented the property for a year. This, however, he denies. He did know, however, that a daughter of the defendant in attachment resided in East Orange, not far from the house in which he himself had but recently resided; he knew also that Samuel Eustice, the brother of Mrs. Bray, the wife of the defendant in attachment, was in possession of the lot of land which was attached at the time of the attachment, and was using the same as a chicken farm; that he was not only then in possession, but has been in possession ever since. He also knew that John Eustice was the business agent of the defendant, and that his office was in Newark. Mr. Mathesius further states that he never did make any inquiry for the residence or address of the defendant, nor did he notify any of the persons who would be likely to inform the defendant of the pendency of the attachment. It will be presumed that the notice required by the statute is the only notice that was attempted to be given of the attachment.

In *Herbert* v. *Herbert, 47 N. J. Eq. (2 Dick.) 11,* the facts were that Henry L. Herbert, a resident of New York, purchased land in Monmouth county upon which he built a summer home. In May, 1889, he sold the property to Devoe, who gave back to Herbert a purchase-money mortgage for $5,000. Several months before the conveyance to Devoe, John W. Herbert issued an at-

tachment against Henry L. Herbert and attached the lands in question. This proceeding was carried on regularly and judgment was entered in April, 1890, against the defendant in attachment, Henry L. Herbert, for nearly $4,000. The property was sold by the auditor and purchased by the plaintiff in attachment for $3,000, and not until all this had happened did Henry L. Herbert know anything about the attachment proceedings. They had been conducted by John W. Herbert's son, who was an attorney at law of this state, and no notice or intimation of the existence of the suit had been given to Henry L. Herbert, although John W. Herbert and his son had both meantime visited Henry L. Herbert's office in New York and knew where he could be found. The charge was that the attachment proceedings were secretly conducted in pursuance of a scheme to obtain judgment against the defendant, Henry L. Herbert, without affording him an opportunity to defend, and to sell the property attached and buy it in without the knowledge of the complainants for a grossly inadequate price. A motion to strike this bill from the files was made under the rules, the motion having the force and effect of a demurrer. Chancellor McGill sustained the bill upon the authority of *Moore* v. *Gamble, 9 N. J. Eq. (1 Stock.) 246,* and *Tomkins* v. *Tomkins, 11 N. J. Eq. (3 Stock.) 512.* In the latter case, Chancellor Williamson says: "In a case like the present of foreign attachment where the proceeding is *in rem* and the judgment is obtained without the knowledge of the defendant. and the proceedings are all necessarily *ex parte,* it will be hard, indeed, if this court would not interfere to protect a party against the fraud of the plaintiff. The propriety of this court's interfering in such cases is too obvious to require its being vindicated."

The case came on for final hearing before Vice-Chancellor Van Fleet, in *Herbert* v. *Herbert, 49 N. J. Eq. (4 Dick.) 70.* His judgment was affirmed by the court of errors and appeals, *Ibid. 565.* The vice-chancellor says: "He was thus, in consequence of his ignorance that a suit had been brought against him, deprived of all opportunity to go before the court, out of which the attachment issued, and show that the claim on which the attachment was founded was invalid. The gravamen of the

complainant's case is that he has been condemned unheard, or, stated in another form, the wrong of which he complains is this: That his property has been taken away from him and made over to the defendant by means of a judgment, founded on a false claim, without his having had an opportunity of being heard in his defence. In the language of the chancellor, in this very case, 'it would be monstrous if equity could not give relief in such a case.' "

The two principles decided are these—*first,* that a defendant in a judgment at law who has a defence which he might have made successfully at law if he had had opportunity to set it up, but who was prevented from doing so by accident or by the fraud of his adversary unmixed with negligence or fraud on his part, may still have the benefit of his defence by suit in equity, and *second,* that where a plaintiff in attachment recovers a judgment against the defendant on a false claim, or by concealing from the auditor any fact which tends to show that the claim on which his attachment is founded is not a valid one, a court of equity will, in case no relief can be had at law, interpose to protect the defendant against the judgment, provided he shows that the judgment was entered without his having such knowledge of the suit as afforded him an opportunity to make his defence.

In this case not only did one of the joint covenantors reside in this state at the time of the attachment, but the president of the company, and, therefore, the company, was in a position to know that fact, and also to ascertain the residence of the defendant in attachment, who was proceeded against. I do not know of any rule of law which requires a plaintiff in attachment to give any notice of the pendency of the suit except such notice as is required by the act to be published, but in view of the circumstances of this case, considering the severance of the obligation, the surreptitious manner of conducting the attachment proceeding, the fact that a lot of land worth from $750 to $900 was purchased by the plaintiff in attachment for $25, subject to something over a hundred dollars in liens, I do not think it would be equitable to permit the plaintiff in attachment to avail itself of the proceedings.

There is yet another point which touches the validity of the attachment proceeding. The affidavit on which the attachment is based declares that Joseph Bray is a non-resident, and that he owes a debt to the engineering company. As a matter of fact, the claim which the General Engineering Company prefers against Mr. Bray is a claim based on a covenant that sounds in damages, and not only is his affidavit, therefore, untrue, but the fact places the claim beyond the reach of the ordinary attachment suit. In *Barber* v. *Robinson, supra,* the attachment was in covenant, but in that case the covenant was that the defendant would pay a certain amount of cash in a certain contingency. The difference between an attachment of that character and an attachment for unliquidated damages is shown by the case of *Cheddick* v. *Marsh, 21 N. J. Eq. (1 Zab.) 463,* where it was held that a writ of attachment would not issue for a penalty intended to secure unliquidated damages. See, also, *Heckscher* v. *Trotter, 48 N. J. Law (19 Vr.) 419,* and *Wynant* v. *Nautical Preparatory School, 27 N. J. L. J. 202.*

I conclude, therefore, that the proceedings by which the General Engineering Company was enabled to take title to the defendant's lands must be disregarded and the deed and all the proceedings upon which it was founded set aside. This measure of relief, however, will be awarded upon condition that the complainants do equity. The decree will provide that upon payment to the General Engineering Company of the amount paid by it to satisfy the municipal liens above mentioned, with interest, within twenty days after the date of this decree, the said proceedings shall thereupon become null and void, and upon such payment, or the tender thereof within that period, the General Engineering Company shall reconvey the said premises to the defendant Joseph Bray and discontinue and cancel the said attachment proceedings.

The decree will be without costs in favor of either party against the other.